UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ARBARY JACKSON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:10CV104 CDP |
| | ) | |
| CHAIRMAN AND MEMBERS OF | ) | |
| THE MISSOURI BOARD OF | ) | |
| PROBATION AND PAROLE, et al. | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

Plaintiff Arbary Jackson is a parolee who challenges the constitutionality of the monthly fee assessed by the Missouri Board of Probation and Parole. He claims the fee violates the Ex Post Facto Clause, the Bill of Attainder Clause, and the Due Process Clause of the United States Constitution. Defendants Ellis McSwain and Emily Henderson, the Chairman of the Parole Board and Jackson's parole officer, have jointly moved to dismiss Jackson's amended complaint for failure to state a claim upon which relief could be granted. Jackson moved for summary judgment. Because the fee does not violate the constitutional clauses Jackson asserts I will grant McSwain and Henderson's motion to dismiss and deny Jackson's motion for summary judgment.

**Background**

Plaintiff Arbary Jackson was convicted of a crime and began serving his sentence in 1977. In 1977, Missouri's parole statute enacted in 1957 was still effective. *See* Mo. Rev. Stat. § 549.261 (1978). The statute did not specifically authorize collection of the monthly fee Jackson complains of, rather it authorized the Parole Board to "adopt such other rules not inconsistent with law as it may deem proper or necessary with respect to . . . conditions to be imposed upon parolees." Mo. Rev. Stat. § 549.261.4 (1978). In 1982, while Jackson was still incarcerated, Mo. Rev. Stat. § 549.261 (1978) was repealed and replaced with Mo. Rev. Stat. § 217.690 (Cum. Supp. 1984). *See* H.B. 1196 § 123, 81st Gen. Assembly, 2d Reg. Sess. (Mo. 1982), *reprinted in* 1982 Mo. Laws 435-75. The 1982 version used the same language as the 1957 version and so likewise did not authorize collection of the fee. *See* Mo. Rev. Stat. § 217.690 (Cum. Supp. 1984). The statute was again amended in 1995. *See* Mo. Rev. Stat. § 217.690 (Cum. Supp. 1995). The 1995 version did not authorize the collection of the fee either, but contained language identical to the 1957 and 1984 versions with respect to parole conditions. Mo. Rev. Stat. § 217.690.3 (Cum. Supp. 1995).

Jackson was released and placed on parole supervision in 2001. It was not until 2005 that the statute was amended to give the Parole Board discretionary

authority to collect a monthly fee. *See* H.B. 700, 93d Gen. Assembly, 1st Reg. Sess. (Mo. 2005), *reprinted in* 2005 Mo. Laws 868-70; *see also* Mo. Rev. Stat. § 217.690.3-4 (Cum. Supp. 2005). H.B. 700 was signed by former Governor Matt Blunt on June 21, 2005; it became effective on August 28, 2005.

The 2005 amendment provided that the Parole Board has "discretionary authority to require the payment of a fee, not to exceed sixty dollars per month, from every offender placed under board supervision . . . to waive all or part of any fee, to sanction offenders for willful nonpayment of fees, and to contract with a private entity for fee collections services." After the amendment, the Parole Board began assessing a $30 monthly fee on those under its supervision. The fee can be waived for a number of reasons.[1] *See* 14 C.S.R. 80-5.020(1)(A); *see also Missouri Department of Corrections Intervention Fee Frequently Asked Questions*, doc.mo.gov, http://doc.mo.gov/documents/prob/Intervention%20Fee%20FAQ.pdf (last visited Dec. 2, 2010). Failure to pay the fee without a waiver can result in sanctions such as shock incarceration. 14 C.S.R. 80-5.020(1)(H).

---

[1]For example, the fee is waived for the first ninety days after a prisoner's release and could be waived if the offender is entitled to deferred prosecution, engaged in the drug court, on pretrial supervision, living in another state, confined in a local jail, pending transfer to another state, has insufficient income, or for various judicial waivers. 14 C.S.R. 80-5.020(1)(E), (F), (G), (H).

On April 30, 2007, Jackson brought a related case on behalf of himself and those similarly situated under 28 U.S.C. § 1983. He claimed the fee violated the Ex Post Facto Clause, U.S. Const. art. I, § 10, cl. 1, the Bill of Attainder Clause, U.S. Const. art. I, § 10, cl. 1, and the Due Process Clause, U.S. Const. amend. XIV, § 1. He named the Parole Board as the only defendant, requesting both declaratory and injunctive relief. I dismissed that lawsuit because the Parole Board, as an instrumentality of the State of Missouri, is immune from such suit under the Eleventh Amendment. *Jackson v. Mo. Bd. of Prob. & Parole*, No. 4:07-cv-860 (E.D. Mo. filed Nov. 5, 2007). The Eighth Circuit affirmed the dismissal. *Jackson v. Mo. Bd. of Prob. & Parole*, No. 07-3882, 306 Fed.Appx. 333, 2009 WL 50175 (8th Cir. Jan. 9, 2009) (per curiam).

Jackson later filed a case in the Circuit Court of Cole County claiming Mo. Rev. Stat. § 217.690.3 violated Mo. Const. art. I, sec. 13's prohibition on ex post facto laws. On March 20, 2009, the Circuit Court of Cole County granted judgment on the pleadings at the request of the Members of the Missouri Board of Probation and Parole. Jackson appealed the decision. On January 12, 2010, the Missouri Supreme Court affirmed the state trial court's decision. *Jackson v. Members of the Mo. Bd. of Prob. & Parole*, 301 S.W.3d 71, 71 (Mo. 2010) (per

curiam). It held that Mo. Rev. Stat. § 216.690.3 is not retrospective or retroactive, as applied to Jackson, and does not violate Mo. Const. art. I, sec. 13. *Id.*

On January 19, 2010, Jackson filed this case. Jackson asserts, identically to his April 30, 2007 case brought in this Court, that the fee violates the Ex Post Facto Clause, U.S. Const. art. I, § 10, cl. 1, the Bill of Attainder Clause, U.S. Const. art. I, § 10, cl. 1, and the Due Process Clause, U.S. Const. amend. XIV, § 1. However, he names as defendants Ellis McSwain and Emily Henderson, the Chairman of the Parole Board and Jackson's parole officer.

## **Discussion**

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). The purpose of such a motion is to test the legal sufficiency of the complaint. When considering a 12(b)(6) motion, the court should assume all factual allegations of a complaint are true and construe them in favor of the plaintiff. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). While the complaint need not contain detailed factual allegations, the plaintiff must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). A complaint should not be dismissed merely because the court doubts a plaintiff will be able to prove all the necessary

allegations. *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997). The issue is not whether the plaintiff will ultimately prevail but whether he is entitled to present evidence to support his claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## I. Ex Post Facto Clause

The United States Constitution prohibits ex post facto laws. U.S. Const. art. I, § 10, cl. 1. Ex post facto laws "impose a punishment for an act which was not punishable at the time it was committed; or impose additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28-29 (1981) (citing *Calder v. Bull*, 3 U.S. 386, 390 (1798)). The intent of the Framers in prohibiting ex post facto laws was to "assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver*, 450 U.S. at 28-29 (citing *Dobbert v. Florida*, 432 U.S. 282, 298 (1977)). A law violates the Ex Post Facto Clause if it: (1) applies retrospectively to the offender; and (2) disadvantages the offender. *Fogie v. Thorn Am., Inc.*, 95 F.3d 645, 651 (8th Cir. 1996) (citing *Miller v. Florida*, 482 U.S. 423, 430 (1987) and *Weaver*, 450 U.S. at 29)).

A law is retrospective if it "changes the legal consequences of acts completed before its effective date." *Miller*, 482 U.S. at 430 (citing *Weaver*, 450

U.S. at 31). Jackson argues that the Missouri parole statute, Mo. Rev. Stat. § 217.690, is retrospective because the Missouri Supreme Court has held that it is generally retrospective to the extent it alters the consequences attached to a sentence imposed before its enactment. *See State ex rel. Cavallaro v. Groose*, 908 S.W.2d 133, 136 (Mo. banc 1995). In *Cavallaro*, however, the court only analyzed the second prong of the ex post facto test when it held that the claimant failed to prove the statute altered the definition of his crime or increased his punishment. *Id.* Additionally, the Missouri Supreme Court, in a case filed by Jackson and involving this statute, held that the fee does not change the effect of Jackson's conviction, parole status, obligations, or duties. *Jackson v. Members of the Mo. Bd. of Prob. & Parole*, 301 S.W.3d 71, 71 (Mo. 2010) (per curiam). It further held that subsection 3 of the statute is not retrospective, as applied to Jackson. *Id.* Irrespective of whether the statute is retrospective, however, it does not violate the Ex Post Facto Clause because it does not increase punishment.

A number of other states impose monthly fees on parolees through statutes that vary with respect to applicability, consequences of non-compliance, and effective dates; courts have routinely held that the fees do not violate the Ex Post Facto Clause. *Taylor v. Sebelius*, 189 Fed. Appx. 752, 2006 WL 2037158 (10th Cir. 2006) (upholding a $25 monthly fee imposed on parolees over multiple

challenges, including the Ex Post Facto Clause, Bill of Attainder Clause, and Due Process Clause); *Walp v. Bozarth*, 138 F.3d 951 (5th Cir. 1998) (per curiam) (upholding a parole fee); *Taylor v. Rhode Island*, 101 F.3d 780 (1st Cir. 1996) (upholding a $15 monthly fee); *Owens v. Sebelius*, 357 F. Supp 2d 1281 (D. Kan. 2005) (upholding a $25 monthly fee); *Glaspie v. Little*, 564 N.W.2d 651 (N.D. 1997) (upholding a $30 monthly fee); *Frazier v. Mont. State Dep't. of Corr.*, 920 P.2d 93 (Mont. 1996); *Commonwealth v. Nicely*, 638 A.2d 213 (Pa. 1994).

While various tests have been employed in the ex post facto analysis of parole fee statutes, most courts have looked to the intent of the legislature at some point in the analytical framework. The United State Supreme Court uses a two-part test to distinguish between civil remedies or punitive penalties, asking, first, whether the legislature intended the statute to be criminal or civil, and, second, whether the statute is "so punitive in fact" that it "may not legitimately be viewed as civil in nature" despite legislative intent. *United States v. Ursery*, 518 U.S. 267, 288 (1996). Under this test, claimants face a "heavy burden" in making a showing of such a punitive effect and can succeed only on the "clearest proof." *Id.*

The structure and design of the Missouri parole statute, to the extent it authorizes a monthly fee, coupled with the declared intent, show it is civil in nature and is not a penalty. By design the fee pays only for those services

provided to the offender while on under the supervision of the Parole Board. The plain language of the statute says it is to be used to "provide community corrections and intervention services for offenders[,]" including "substance abuse assessment and treatment, mental health assessment and treatment, electronic monitoring services, residential facilities services, employment placement services, and other offender community corrections or intervention services designated by the board *to assist offenders to successfully complete probation, parole, or conditional release*." Mo. Rev. Stat. § 217.690.3 (Cum. Supp. 2005) (emphasis added). Further, the fee can be waived for the reasons discussed earlier.

The Missouri legislature did not state its specific intent within the statute when authorizing the fee. It does not provide comprehensive legislative history, as it does not generally publish its committee reports or regularly transcribe hearings. To the extent statements of the Governor signing the bill into law are legislative history, however, the declared intent demonstrates an appropriate governmental interest when enacting such a statute. Former Governor Matt Blunt issued a press release on the day he signed L. 2005 H.B. 700 saying "[t]he fee is a good example of appropriate cost sharing and will provide needed funding for corrections services at the expense of offenders . . . It just makes sense that offenders should have a hand in paying for the services they receive." Press

- 9 -

Release, Matt Blunt, Governor, State of Missouri (June 21, 2005), 2005 WLNR 9849179. Other courts have relied on similar statements in upholding monthly parole fee statutes. *See Taylor*, 189 Fed. Appx. at 757 (relying on testimony from a state legislature stating a fee was assessed based on accountability achieved through cost sharing); *Frazier*, 920 P.2d at 96 (affirming a lower court's determination a fee was not punishment but intended to create responsibility for rehabilitation through payment for services rendered).

The plain language of the statute and post-enactment statements of the former Governor show the statute is civil in nature and was not intended to be punitive. With respect to the second factor in the *Ursery* test, this fee is not "so punitive in fact" that the law "may not legitimately be viewed as civil in nature." *See Ursery*, 518 U.S. at 288. Specifically, it is discretionary, reasonably related to legitimate penological goals such as rehabilitation, and is not excessive.[2]

---

[2]Jackson argues that an analysis of whether the fee is a "new condition" is necessary because, according to him, new conditions are increased punishment. I disagree. It is not that a new condition increases punishment, but rather, punishment is increased by a new condition if the condition is punitive in nature. Here, it is not. Jackson also urges me to analyze whether he was given fair notice of the fee. The Ex Post Facto Clause, however, only requires notice where punishment is increased. *See Weaver v. Graham*, 450 U.S. 24, 30 (1981) (stating that "[c]ritical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated."). Although Missouri law requires conditions of parole to be announced when parole is ordered, *see* Mo. Rev. Stat. § 217.690.4, the statute does not say civil or administrative conditions of parole may not be altered after announced. In fact, the Missouri parole statute has been altered several times and those alterations have largely been upheld. Further, Jackson did receive notice of the fee before it became due, evidenced by Exhibit A to his original complaint filed in this Court, *Jackson v. Mo.*

Therefore, the fee is not an additional punishment, and Jackson cannot state a claim upon which relief can be granted under the Ex Post Facto Clause.

## II.     Bill of Attainder

The United States Constitution prohibits bills of attainder. U.S. Const. art. I, § 10, cl. 1. Bills of attainder are "legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial." *Citizens for Equal Prot. v. Bruning*, 455 F.3d 859, 869 (8th Cir. 2006) (quoting *United States v. Lovett*, 328 U.S. 303, 315 (1946)). "In order to be termed a bill of attainder, a law must: (1) specify the affected persons, (2) impose punishment, and (3) lack a judicial trial." *Palmer v. Clarke*, 408 F.3d 423, 433 (8th Cir. 2005) (quoting *Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.*, 468 U.S. 841, 847 (1984)). Because, as I have already discussed, the fee does not subject Jackson to additional punishment it does not violate the Bill of Attainder Clause.

## III.    Due Process

The United States Constitution prohibits states from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. In order to maintain a due process challenge, the claimant must show that a liberty or property interest is present and that state procedures are constitutionally

---

*Bd. of Prob. & Parole*, No. 4:07-cv-860 (E.D. Mo. filed Nov. 5, 2007).

inadequate. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 57 (1999). An inmate has no constitutional or inherent liberty interest in parole, but a state, by statute, may create a liberty interest in parole. *Adams v. Agniel*, 405 F.3d 643, 645 (8th Cir. 2005) (citing *Greenholtz v. Inmates of Neb. Penal & Corr.*, 442 U.S. 1, 9-11 (1970). The Missouri parole statute, however, does not create such interest. *Adams*, 405 F.3d at 645; *Fults v. Mo. Bd. of Prob. & Parole*, 857 S.W.2d 388, 392 (Mo. Ct. App. 1993).

McSwain and Henderson argue that because the Missouri parole statute does not create a liberty interest in parole, there can be no liberty interest in the conditions of parole. But Jackson has already obtained parole status, and he is not seeking to protect an interest in a condition of parole. Instead, Jackson seeks to protect an interest in his private funds. Jackson has a property interest over funds legitimately earned or received, where he retains rightful ownership. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571-72 (1972) (acknowledging real estate, chattels, and money as basic property interests); *cf. Taylor*, 189 Fed. Appx. at 760 (holding that a prisoner has a property interest in a prison trust account). As such, the question becomes what process is due, and I must balance (1) private interests affected by official action, (2) risk of erroneous deprivation, and probable value, if any, of additional or substitute procedural safeguards, and (3) government interests, including fiscal and administrative costs of additional

process. *Passmore v. Astrue*, 553 F.3d 658, 664 (8th Cir. 2008) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).[3]

In *Taylor v. Sebelius*, the Tenth Circuit held that a $25 monthly fee imposed on parolees in Kansas without pre-deprivation proceedings did not violate the Due Process Clause of the United States Constitution. *Taylor v. Sebelius*, 189 Fed. Appx. 752, 760 (10th Cir. 2006). Taylor had multiple convictions between 1985 and 1987. A state administrative rule authorizing collection of the fee was adopted, under authority of state statute, Kan. Stat. Ann. § 75-52. 139, but it did not become effective until 1995. *See* Kan. Admin. Regs. § 44-5-115. After Taylor was paroled he was re-incarcerated and unpaid parole fees were deducted from his prison trust account. He claimed the deduction violated his Fourteenth Amendment right to procedural due process. The court found Taylor's private interest in avoiding erroneous assessment was not compelling because he could contest any assessment through prison grievance proceedings. *Taylor*, 189 Fed. Appx. at 760. The risk of erroneous deprivation was also found to be low because collection of the fee only involved routine matters of accounting. *Id.* And the government interest in accountability and rehabilitation, coupled with the fee's effect of reimbursing the state for its services, was found sufficient. *Id.* at 760-61.

---

[3] For the reasons stated in footnote 2 of this Order, Mo. Rev. Stat. § 217.690.4, does not establish a state-created liberty interest in the specific parole conditions announced at the time parole is ordered.

In upholding imposition of the fee, the court noted that pre-deprivation proceedings would be expensive, burdensome, and impractical. *Id.* at 761.

Jackson, like the parolee turned inmate in *Taylor*, cannot state a claim for violation of his right to procedural due process. Although Jackson has a private interest in avoiding erroneous assessment, it is not compelling. Jackson's parole is monitored by Henderson, an individual with whom Jackson has routine access. If Jackson believed he was exempt from payment of the fee he could speak with Henderson or more formally request a waiver from his District Administrator under 14 C.S.R. 80-5.020(1)(H). If there was an accounting error he could likewise consult Henderson or his District Administrator.

With respect to the second factor in the *Mathews* test, the risk of erroneous deprivations is also low because, as in *Taylor*, collection of the fee only involves routine matters of accounting. And the government interest here is identical to the one in *Taylor*, evidenced by the plain language of the statute and the statements of the former Governor. Specifically, the plain language of the statute spells out the rehabilitive services the fee must be used for and former Governor Blunt spoke about the importance of accountability and reimbursing the state for services provided. A pre-deprivation hearing for each parolee under the Parole Board's supervision would be onerous and unnecessary, as the terms for waiver making a parolee exempt from payment of the fee are outlined in Missouri's Code of State

Regulations. *See* 14 C.S.R. 80-5.020. Imposition of the fee does not violate Jackson's right to due process.

Jackson has failed to state a claim upon which relief can be granted. The disposition of this case involves no factual disputes. Even though the statute was amended to impose the monthly fee after Jackson's crime and after he was paroled, the alteration did not increase his punishment. Because the statute did not increase punishment, Jackson cannot state a claim for violation of the Ex Post Facto Clause or the Bill of Attainder Clause. And finally, proceedings in place for assessment, monitoring, and waiver of the fee are sufficient to protect Jackson's due process rights.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss [#13] is GRANTED, and plaintiff's complaint is dismissed in its entirety. A judgment in accordance with this ruling will be issued this same date.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment [#22] is DENIED.

*/s/ Catherine D. Perry*
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 7th day of December, 2010.